## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

NOLAN KINARD FLOYD, SR.,

    Plaintiff,

    v.

WARDEN SHANE WEBER, et al.,

    Defendants.

Civil Action No.:  SAG-22-723

## MEMORANDUM OPINION

Self-represented Plaintiff Nolan Kinard Floyd, Sr., who is currently incarcerated at North Branch Correctional Institution ("NBCI"), filed his Amended Complaint in this civil rights action against Warden Shane Weber, Accounts Manager Cheryl Lindner, Chief of Security Keith Arnold, Lt. James Smith, Lt. Thomas Menges, and Correctional Officers Benjamin Wagner, Brandon Reed, Ethan Peer, James Tichnell, Jason Lee, David Hedrick, Eric Layton, and Jennifer Biddle.[1] ECF No. 5.  Defendant Lindner and a claim regarding Floyd's mail were subsequently dismissed by the Court.  ECF No. 7.  Remaining are Floyd's allegations of excessive force, improper disciplinary proceedings, and retaliation.  *See id.* at 3.

Defendants filed a Motion to Dismiss, or in the Alternative, for Summary Judgment on July 7, 2023.[2]  ECF No. 28.  Floyd was informed by the Court, pursuant to *Roseboro v. Garrison*,

---

[1] The Clerk will be directed to amend the docket to reflect Defendants' full and correct names.

[2] Defendants also filed a Motion to File Exhibit Under Seal.  ECF No. 29.  Defendants request that the Court seal Exhibit E to their dispositive motion, which contains a "one-page confidential medical record of the Plaintiff." *Id.* at 1.  Local Rule 105.11 (D. Md. 2023), which governs the sealing of all documents filed in the record, states in relevant part: "[a]ny motion seeking the sealing of pleadings, motions, exhibits or other documents to be filed in the Court record shall include (a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protection."  The Rule balances the public's common law right to inspect and copy judicial records and documents, *see Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978), with competing interests that sometimes outweigh the public's right, *see In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984).  "[S]ensitive medical or personal identification information may be sealed," but not where "the scope of [the] request is too broad."  *Rock v. McHugh*, 819 F. Supp. 2d 456, 475 (D. Md. 2011).

528 F.2d 309 (4th Cir. 1975), that his failure to file a response in opposition to the Motion could result in dismissal of his Amended Complaint.  ECF No. 31.  To date, Floyd has not filed any response.  A hearing is not necessary.  *See* Local Rule 105.6 (D. Md. 2023).  For the reasons explained below, the Court will grant Defendants' Motion.

## Background

Floyd alleges that on March 21, 2022, Warden Weber and Chief Arnold gave Lt. Menges and Officers Wagner, Reed, Peer, Tichnell, and Lee access to attack Floyd while he was a pretrial detainee at Western Correctional Institution.  ECF No. 5 at 4.  He alleges that at approximately 8:00 a.m., the officers choked him and "attacked[,] stamped, and kicked" his body, including his hernia, without cause.  *Id.*  Floyd claims that the day of the attack Lt. Smith was in charge of housing unit #4, where Floyd was housed in cell 4-C-37. Lt. Smith allowed the assault to occur and subsequently "conspired with officers" to write false ticket reports.  *Id.* at 4.  Floyd contends that Officers Hedrick, Layton, and Biddle wrote false disciplinary reports stating that they found a 10.5-inch homemade weapon in Floyd's cell and that there was damage to his cell's overhead light.  *Id.* at 5.  Floyd further alleges that Warden Weber and Chief Arnold also permitted the correctional officers to destroy his commissary, mail, pictures, and legal papers in retaliation for his filing a complaint about the assault.  *Id.* at 4.

Defendants submit a Notice of Inmate Rule Violation issued by Wagner reporting that at approximately 9:22 a.m. he, along with Reed, Peer, Tichnell, Lee, and Menges, approached Floyd's cell during a mass shakedown.  ECF No. 28-3 at 1.  Floyd became argumentative when ordered to move to the back of his cell for a strip search.  *Id.*  Floyd took several steps backwards

---

Here, the scope of the request is limited to a single medical record.  Further, as resolution of this case turns on Floyd's failure to exhaust his administrative remedies, and not the contents of his private medical records, there is little need for these documents to remain publicly available.  Therefore, the Motion shall be granted.

before stopping abruptly with a clenched fist and attempting to strike Wagner. *Id.* Wagner avoided the punch and took Floyd to the ground; Floyd refused orders to put his hands behind his back. *Id.* Officers Peer, Tichnell, Reed, and Lee gained control of Floyd's arms and legs while Officer W. Logsdon entered to put hand restraints on Floyd. *Id.* Peer and Menges escorted Floyd to the property room to wait for medical attention. *Id.* Floyd was charged with violation of Rule 101 (Commit assault or battery on staff) and Rule 316 (Disobey an order) and moved to administrative segregation pending a formal hearing. *Id.*

Defendants also submitted the affidavit of the WCI Litigation Coordinator Renee Emerick, who attests that a search of the Administrative Remedy Procedure ("ARP") records does not reveal a record of any ARP filed by Floyd with the Warden complaining about the events alleged in the Amended Complaint. ECF No. 28-2 at ¶ 3. Kristina Donnelly, the Special Assistant to the Director of Patuxent Institution, attests that a search of the Commissioner of Correction records for ARP appeals also reveals that Floyd did not file any appeal concerning these allegations. ECF No. 28-4 at ¶¶ 2-4. Finally, Todd Taylor, Jr., the Director of the Inmate Grievance Office ("IGO"), avers that Floyd did not file any grievances with IGO concerning these claims either. ECF No. 28-5 at ¶¶ 2-3.

## Standard of Review

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the

elements of the claim.  However, the complaint must allege sufficient facts to establish those elements."  *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) (emphases added).  "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'"  *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)).  "A fact is material if it 'might affect the outcome of the suit under the governing law.'"  *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48 (emphasis in original). The Court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. NC. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015). At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial."  *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56(a).  A motion styled in this manner implicates the Court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible

4

where a plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for a court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; a court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261. Because Defendants filed a motion styled as a motion to dismiss, or in the alternative, for summary judgment, Floyd was on notice that the Court could treat the Motion as one for summary judgment and rule on that basis.

The Court is mindful that Floyd is a self-represented litigant. A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But liberal construction does not mean a court can ignore a clear failure in the pleadings to allege facts which set forth a claim. *See Weller v. Department of Social Services*, 901 F.2d 387, 391 (4th Cir. 1990). Moreover, a court cannot assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).

## Discussion

Defendants assert that the Amended Complaint should be dismissed or summary judgment should be granted in their favor because (1) Defendants are immune from this lawsuit under the Eleventh Amendment, (2) Floyd failed to exhaust administrative remedies, (3) Floyd's state law claims are barred because he failed to comply with the Maryland Tort Claims Act, (4) Floyd failed to state a due process claim, (5) Floyd failed to state a claim for negligence, (6) Defendants were not deliberately indifferent to Floyd's health and safety, (7) Floyd failed to state a claim for supervisory liability, and (8) Defendants are entitled to summary judgment on the issue of Floyd's cell search. ECF No. 28-1.

## A.  Eleventh Amendment Immunity

The Eleventh Amendment to the Constitution immunizes state agencies and departments from citizen suits for damages in federal court.  *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  Defendants are Maryland state employees.  Suits against agents of the state for acts taken in their official capacities are equivalent to suing the state itself.  *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989).  Accordingly, the claims against Defendants in their official capacities are barred by the Eleventh Amendment., *see Pennhurst*, 465 U.S. at 100–01, and will be dismissed with prejudice.

## B.  Exhaustion of Administrative Remedies

As to Floyd's claims against Defendants in their individual capacities, Defendants raise the affirmative defense that Floyd has failed to exhaust his administrative remedies.  If Floyd's claims have not been properly presented through the administrative remedy procedure, they must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e.  The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e.  Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner.  Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants.  *See Jones v. Bock*, 549 U.S. 199, 215-216 (2007); *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017).

Although exhaustion under § 1997e(a) is not a jurisdictional prerequisite, the plaintiff must nonetheless exhaust before this Court will hear the claim. *See Jones v. Bock*, 549 U.S. 199, 215-16 (2007); *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F. 2d 674, 682 (4th Cir. 2005).  Because

the Court may not consider an unexhausted claim, exhaustion prior to federal suit is mandatory. *Ross v. Blake*, 578 U.S. 632, 639 (2016). Therefore, a court ordinarily may not excuse a failure to exhaust. *Id.* (*citing Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

Exhaustion requires an inmate to complete "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). Importantly, however, the Court must ensure that "any defects in exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Moreover, an inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a); *see Ross*, 578 U.S. at 635. An administrative remedy is not "available" where the prisoner, "through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (citing *Aquilar-Avellaveda*, 478 F.3d at 1225); *Kaba*, 458 F.3d at 684.

The Maryland Department of Public Safety and Correctional Services ("DPSCS") has established the ARP for use by Maryland State prisoners for "inmate complaint resolution." *See generally* Md. Code Ann. (2008 Repl. Vol.), Corr. Servs. ("C.S."), §§ 10-201 *et seq.*; Md. Code Regs. ("COMAR") 12.07.01B(1) (defining ARP). The grievance procedure applies to the submission of "grievance[s] against … official[s] or employee[s] of the Division of Correction." C.S. § 10-206(a).

First, a prisoner must file an ARP with the warden within 30 days of the incident at issue. Md. Code Regs. § 12.02.28.05(D)(1) (requiring filing with the "managing official"); Md. Code Regs. § 12.02.28.02(B)(14) (defining "managing official" as "the warden or other individual responsible for management of the correctional facility"); Md. Code Regs. § 12.02.28.09(B)

(setting the 30-day deadline).  Second, if the ARP is denied, or the inmate does not receive a timely response, a prisoner must file an appeal with the Commissioner of Correction within 30 days.  Md. Code Regs. § 12.02.28.14(B)(5).  If the appeal is denied, the prisoner must appeal within 30 days to the IGO.  *See* Md. Code. Ann., Corr. Servs. §§ 10-206, 10-210; Md. Code Regs. § 12.07.01.05(B).

 If the ARP is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing."  C.S. § 10-207(b)(1); *see also* COMAR 12.07.01.06(B).  An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii).  Inmates may seek judicial review of the IGO's final determinations in a Maryland Circuit Court.  *See* Md. Code Ann., Corr. Servs. § 10-210(a).  However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings.  *See* C.S. § 10-208; COMAR 12.07.01.07-.08.

Floyd asserts in his Amended Complaint that his grievances were dismissed and that he could not appeal because he was a pretrial detainee in the custody of the Department of Corrections.  ECF No. 5 at 2.  However, the PLRA applies regardless of whether a plaintiff is confined in a jail or prison or whether they are in pretrial or postconviction status.  Thus, Floyd cannot be excused from the PLRA's exhaustion requirements.  The affidavits and declarations submitted by Defendants demonstrate that Floyd failed to file an ARP with the Warden and, even if he did file an ARP as he contends, that he did not file any appeals with the Commissioner or the IGO.  As such, Floyd did not exhaust his administrative remedies before initiating this civil action and cannot now do so, as the time has elapsed. Therefore, Defendants are entitled to summary judgment in their individual capacities.

### C.  State Law Claims

To the extent Floyd brings a state law claim for negligence, the Court declines to retain supplemental jurisdiction.  "When, as here, the federal claim is dismissed early in the case, the federal courts are inclined to dismiss the state law claims without prejudice rather than retain supplemental jurisdiction."  *Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726-727 (1966).  As such, Floyd's negligence claim will be dismissed without prejudice.

### Conclusion

For the foregoing reasons, Defendants' Motion is granted.[3]  The Amended Complaint is dismissed with prejudice against Defendants in their official capacities and without prejudice as to Floyd's state law negligence claim.  Judgment is entered in favor of Defendants in their individual capacities as to all federal claims.

A separate Order follows.

<u>October 26, 2023</u>                          _____/s/_____
Date                                            Stephanie A. Gallagher
                                                United States District Judge

---

[3] As Defendants' Motion will be granted for the foregoing reasons, the Court will not address their remaining arguments.